UNITED STATES DISTRICT COURT
<u>EASTERN DISTRICT OF NEW YORK</u>

------------------------------------------------------------------- x
                                        :

**ROKSANA KAYUMOVA & LLOYDIA BLAIR**,       :

                   Plaintiffs,          :

                   v.                  :

**CITY OF NEW YORK** and **NEW YORK CITY**   :
**DEPARTMENT OF HOMELESS SERVICES**,     :

                   Defendants.       :   No.

                                          :

------------------------------------------------------------------- x   <u>**VERIFIED COMPLAINT**</u>

                                              <u>**Plaintiffs Demand Trial By Jury**</u>

Plaintiffs, Roksana Kayumova and Lloydia Blair, (collectively, the "Plaintiffs") by their attorneys, Clara Smit, Esq. and Bruce J. Gitlin, P.C., plead and allege as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.   This action arises from the repeated, ongoing, and systematic failure of the City of New York ("City"), New York City Department of Homeless Services ("DHS" and, together with the City of New York, the "City Defendants" or "Defendants") to provide effective communication between Defendants' homeless shelter staff and Plaintiffs.  Roksana Kayumova and Lloydia Blair (collectively "Plaintiffs") are deaf, read only a very limited amount of written English and have limited ability to speak and understand others through spoken English.

Plaintiffs utilize American Sign Language ("ASL") to effectively communicate with others and thus require Qualified ASL interpreters to communicate effectively with individuals who are not able to communicate in ASL.  In addition, Roksana Kayumova has cerebral palsy making other forms of communication even more difficult.

2.   Roksana Kayumova and Lloydia Blair, were denied, and Roksana Kayumova continues to be denied, equal access to benefits, services, and effective communication with Defendants' staff because of Defendants' repeated failure to provide them with qualified sign language interpreter services or auxiliary aids.

3.   Defendants have denied Plaintiffs the opportunity to participate in, question, or understand discussions and decisions concerning their residence, or their families' residence, in Defendants' shelters including, but not limited to, regular independent living plans ("ILP"). Defendants have denied Plaintiffs the benefit of meetings with shelter case workers.  Defendants have denied Plaintiffs the opportunity to participate in shelter-wide discussions regarding the availability of public benefits and job opportunities.  Defendants have denied Plaintiffs the ability to express questions or complaints regarding shelter conditions.  This denial to Plaintiffs of access to shelter programs and services available to hearing individuals constitutes discrimination on the part of Defendants in violation of Title II of the Americans with Disabilities Act of 1990 (the "ADA"), Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the New York City Human Rights Law and the New York State Human Rights Law.

4.   Defendants' failure to provide access to effective communication to Roksana Kayumova and Lloydia Blair violates Title II of the ADA, Section 504 of the Rehabilitation Act, New York City Human Rights Law, and the New York State Human Rights Law.

5.   Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees.

## PARTIES

6.   Plaintiff Roksana Kayumova resides at Brooklyn Community Housing Shelter at 105 Carlton Ave, Brooklyn, New York 11205.

7.   Plaintiff Lloydia Blair resides at 881 East 162nd Street, Bronx, New York 10459.

8.   Defendant City of New York is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York.  The City of New York has established and maintains the Department of Homeless Services ("DHS") as a constituent department or agency of the City of New York.

9.   Defendant DHS, located at 33 Beaver Street, New York, NY 10004, is a New York City agency that provides homeless services and operates or funds numerous homeless shelter facilities in New York City, including the Prevention Assistance and Temporary Housing shelter intake office at 46 Powers Avenue, Bronx, New York 10454 (the "PATH").

10. Upon information and belief, City Defendants exercise control over the shelter services system of New York City, serving as sponsors or parent agencies of intake centers and homeless shelters and their respective operators and agents.

11. Upon information and belief, City Defendants provide funding for the shelters and their respective shelter operators and agents.

12. Upon information and belief, City Defendants supervise the operators of, or otherwise operate, the shelters where Plaintiffs reside or have resided.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this action pursuant to §§ 504 and 505 of the Rehabilitation Act and the ADA, as federal questions are at issue, and has pendent jurisdiction over this matter based on the nonfederal claims.

14. This Court has personal jurisdiction over Defendants because Defendants make their principal place of business in New York.

15. Venue is proper in this Court under 28 U.S.C. § 1391(c) because Defendants are subject to the Court's personal jurisdiction.

## FACTS – PLAINTIFF ROKSANA KAYUMOVA

16. On September 5, 2020, Plaintiff Roksana Kayumova, with her hearing partner Rahman Quarles, went to the clearing house location for the NYC Department of Homeless Services to be assigned to a shelter location. Ms. Kayumova brought along her service dog who assists her because she is hearing impaired but was not allowed to bring her service dog into the clearing house to assist her. Ms. Kayumova did require an interpreter to communicate with staff, however, despite a request for one, an interpreter was not provided.

17. Mr. Quarles and Plaintiff Ms. Kayumova were assigned to a shelter at Acacia Network, 115 Henwood Place, 14th Floor, Bronx NY 10453. Shortly thereafter, they had a meeting with a caseworker. Prior to the meeting, they requested an interpreter, but one was not provided.

18. In November 2020, Plaintiff once again made a request for an interpreter with the assistance of Mr. Quarles. Mr. Quarles wrote a letter requesting an ASL interpreter for his partner, plaintiff Roksana Kayumova, for the next meeting with the caseworker. Despite this request, an interpreter was not present at the next meeting.

19.  In December 2020, Mr. Quarles was asked by the case worker during a meeting to have his partner, Ms. Kayumova, sign some documents. There was no interpreter present, therefore, Ms. Kayumova had no understanding regarding the papers she was being asked to sign. Mr. Quarles was uncomfortable with compelling his partner to sign documents that she did not understand without the aid of an interpreter. Mr. Quarles only knows basic sign language and is not able to explain complex documents to Ms. Kayumova, nor is it his responsibility.

20. Plaintiff was supposed to be reviewing and signing an ILP regularly with her caseworker. However, she was never given one or showed one to review and sign.

21. To date, despite multiple requests to have a sign language interpreter at meetings, none has been provided and thus Defendants have failed to ensure effective communication with Plaintiff.

22. Plaintiff left the shelter system for a short time in the latter part of calendar year 2021, but returned in April of 2022 to a shelter.  She presently resides at the Brooklyn Community Housing Shelter at 105 Carlton Ave, Brooklyn, New York 11205. At each location, she has requested interpreters so she may be able to effectively communicate, but none has been provided.

23. Defendants' failure to provide interpretive services caused and continues to cause Ms. Kayumova to experience overwhelming stress, fear, frustration, uncertainty, confusion and feelings of helplessness and has resulted in a delay in moving on to obtain housing and employment as she attempts to navigate her way through the New York City shelter system.

## FACTS – PLAINTIFF LLOYDIA BLAIR

24. Plaintiff Lloydia Blair is deaf and communicates by using American Sign Language.

25.  On or about March 3, 2020, Ms. Blair went to Family Fit after leaving her home. She was told to come back with her children which she did on March 5, 2020.

26. Ms. Blair was provided a sign language interpreter for her initial intake on March 5, 2020.

27. Ms. Blair moved into the shelter located at East NY Inn, Lexington Inn, at 2473 Atlantic Avenue, Brooklyn, New York 11207 where she would spend the next 17 months residing.

28. During her next meeting two weeks later, Ms. Blair was not provided with an interpreter. Using her minor daughter to interpret, she requested that an interpreter be provided to the caseworker. The caseworker responded that she would not provide an interpreter and that they also could not use a video remote interpreter.

29. Ms. Blair continued to have meetings with her caseworker every two weeks until June 2021. There was never an interpreter present despite numerous requests for an interpreter. This lack of an interpreter resulted in confusion regarding the process of obtaining housing and lower amount of benefits.

30. Plaintiff was supposed to be reviewing and signing an ILP regularly with her caseworker. She was never given one, however, or showed one to review and sign.

31. In June 2021, Ms. Blair was assigned a new caseworker. Again Ms. Blair requested an interpreter. Ms. Blair was again told, this time by the new caseworker, that she would not be provided with a sign language interpreter.

32. Finally in August of 2021 Ms. Blair was moved to a new shelter, WIN (Women In Need), located at 4612 Glenwood Rd, Brooklyn, New York. After multiple requests for an interpreter, and approximately 18 months of ineffective communication, Ms. Blair was provided

with an interpreter in this new shelter. Initially on September 13, 2021 she was provided with an onsite interpreter and during two times following that date in September the shelter used a Video Remote Interpreting system to communicate with Ms. Blair. Thereafter, whenever Ms. Blair requested an interpreter, she was denied her request. Further, there was no interpreter provided for her apartment interview despite her requests for an interpreter.

33. Ms. Blair moved out of this shelter into her own apartment in the Bronx in December of 2021.    However, Defendants' failure to provide interpretive services caused Ms. Blair overwhelming stress, fear, frustration, uncertainty, confusion, economic harm, including as a result of her inability to effectively communicate with staff about her public benefits,  and feelings of helplessness and resulted in a delay in moving on to obtain housing as she attempted to navigate her way through the New York City shelter system.

FIRST CLAIM FOR RELIEF

**Discrimination on the Basis of a Disability in
Violation of the Rehabilitation Act
(29 U.S.C. § 794 et seq.)**

34. Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

35. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

36. At all times relevant to this action, the Rehabilitation Act, 29 U.S.C. § 794 et seq., was in full force and effect and applied to Defendants' conduct.

37. Plaintiff Roksana Kayumova is a qualified individual with a disability within the meaning of the Rehabilitation Act.  29 U.S.C. § 705(9)(B); 42 U.S.C. 12102.

38. Plaintiff Lloydia Blair is a qualified individual with a disability within the meaning of the Rehabilitation Act.  29 U.S.C. § 705(9)(B); 42 U.S.C. 12102.

39. The operations of DHS, including PATH, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(3)(A)(ii).

40. Defendants receive federal financial assistance within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(a).

41. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients, such as Defendants, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."  45 C.F.R § 84.52(d)(1).

42. Appropriate auxiliary aids include, but are not limited to, interpreters.  45 C.F.R. § 84.52(d)(3).

43. Defendants have failed, and continue to fail, to comply with the Rehabilitation Act by refusing to provide to deaf and hard of hearing individuals, including Roksana Kayumova and Lloydia Blair, or on their behalf, with:

- qualified interpreters;
- auxiliary aids and services;
- displays in each shelter and housing facility indicating availability of ASL interpreters;
- modification of shelter and housing facility forms to ensure the ability of individuals to designate ASL as their primary language;

- training for DHS and other personnel regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications in its shelters and housing facilities;
- provision/designation of an ADA accessibility coordinator in each shelter and housing facility who would evaluate the needs of any deaf or hard of hearing individual;
- changes in policy and procedure to ensure compliance with the law; and
- implementation of the means of monitoring and reporting non-compliance with the law.

44. The above are examples of techniques employed by other shelters to provide access to services, programs, benefits, activities and facilities for deaf and hard of hearing people in a manner consistent with the Rehabilitation Act and the ADA.

45. Defendants, despite consistent and repeated requests by Plaintiffs, systematically continue to fail to provide qualified sign language interpreters or other effective means of communication to deaf and hard of hearing clients visiting Defendants' shelter system and housing facilities.

46. Defendants, despite consistent and repeated requests by Plaintiffs, refused to provide sign language interpreters during Roksana Kayumova's and Lloydia Blair's prolonged stays at Defendants' homeless shelters and housing facilities.


**SECOND CLAIM FOR RELIEF**

**Discrimination on the Basis of a Disability in Violation of
Title II of the Americans with Disabilities Act of 1990
(42 U.S.C. § 12131 et seq.)**

47. Plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

48. On July 12, 1990 Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

49. At all times relevant to this action, the ADA was in full force and effect in the United States and Plaintiffs had a right not to be subjected to discrimination by City Defendants on the basis of Roksanan Kayumova's and Lloydia Blair's disability. 42 U.S.C. § 12182.

50. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51. The ADA defines a disability as "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include hearing and speaking. 42 U.S.C. § 12102(2)(A).

52. Plaintiff Roksana Kayumova is a qualified individual with a disability within the meaning of the Rehabilitation Act. 42 U.S.C. § 12131(2).

53. Plaintiff Lloydia Blair is a qualified individual with a disability within the meaning of the Rehabilitation Act. 42 U.S.C. § 12131(2).

54. City Defendants are public entities within the meaning of 42 U.S.C. § 12131(1) because the City of New York is a local government and the New York City Department of Homeless Services is a department of New York City.

55. Regulations implementing the ADA clearly require the provision of effective communication as part of its nondiscrimination mandate.

56. Effective communication is achieved when a public accommodation furnishes "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

57. Auxiliary services include, but are not limited to, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103(1)(A); *see also* 28 C.F.R. § 36.303(b)(1).

## MS. ROKSANA KAYUMOVA

58. City Defendants subjected and continue to subject Ms. Kayumova to discrimination based upon Ms. Kayumova's disability in violation of Ms. Kayumova's rights under Title II of the ADA.

59. City Defendants repeatedly failed and continue to fail to provide Ms. Kayumova with auxiliary services in the form of qualified interpreters on numerous occasions at Defendants' PATH office, and shelter.

60. City Defendants failed and continue to fail to ensure that Ms. Kayumova is not excluded, denied services, or otherwise treated differently than other individuals as required by 42 U.S.C. § 12132.

61. City Defendants discriminated and continue to discriminate against Ms. Kayumova by failing to provide Ms. Kayumova with qualified sign language interpreters during meetings with caseworkers and shelter staff, including during critical meetings when decisions were and are made concerning housing for Ms. Kayumova.

62. City Defendants treated and continue to treat Ms. Kayumova differently than hearing individuals by not providing the necessary auxiliary services that would enable her to effectively communicate with caseworkers and shelter staff.

## MS. LLOYDIA BLAIR

63. City Defendants subjected Ms. Blair to discrimination based upon Ms. Blair's disability in violation of Ms. Blair's rights under Title II of the ADA.

64. City Defendants repeatedly failed to provide Ms. Blair with auxiliary services in the form of qualified interpreters on numerous occasions at the shelters plaintiff has resided in.

65. City Defendants failed to ensure that Ms. Blair was not excluded, denied services, or otherwise treated differently than other individuals as required by 42 U.S.C. § 12132.

66. City Defendants discriminated against Ms. Blair by failing to provide Ms. Blair with qualified sign language interpreters during meetings with caseworkers and shelter staff, including during critical meetings when decisions were made concerning housing for Ms. Blair.

67. City Defendants treated Ms. Blair differently than hearing individuals by not providing the necessary auxiliary services that would enable her to effectively communicate with caseworkers and shelter staff.

### THIRD CLAIM FOR RELIEF

**New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101 et seq.**

68. Plaintiff Roksana Kayumova has a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that she is deaf.

69. Plaintiff Lloydia Blair has a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that she is deaf.

70. City Defendants' shelters are places of "housing accommodation[s]" and "publicly-assisted housing accommodations" within the meaning of New York City Human Rights Law, Sec. 8–102 (10)–(11).  These "governmental bodies or agencies" are also "covered entit[ies]," in that they are prohibited from engaging in unlawful discriminatory practices.  NY City Human Rights Law § 8–102 (1), (17).

71. Providing a sign language interpreter to allow deaf or hard of hearing individuals to communicate with governmental bodies during critical meetings in which publicly assisted housing decisions are made for deaf or hard of hearing individuals and their minor children is a "reasonable accommodation" within the meaning of New York City Human Rights Law, Sec. 8-102 (18).

72.  Defendants have wantonly, recklessly, and maliciously acted with disregard for the rights and wellbeing of Plaintiffs and Plaintiffs are thereby entitled to punitive damages.

73. By reason of the foregoing, Plaintiffs demand compensatory and punitive damages and injunctive relief consistent with the reasonable accommodations noted above requiring Defendants to operate in compliance with applicable laws and regulations.

## FOURTH CLAIM FOR RELIEF

### New York State Human Rights Law
### N.Y. Exec. Law § 292

74. Plaintiff Roksana Kayumova has a "disability" as defined in New York State Human Rights Law Section 292 (21), in that she is deaf.

75. Plaintiff Lloydia Blair has a "disability" as defined in New York State Human Rights Law Section 292 (21), in that she is deaf.

76. By reason of the foregoing, Plaintiffs demand compensatory damages and injunctive relief consistent with the reasonable accommodations noted above requiring Defendants to operate in compliance with applicable laws and regulations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter such declaratory and injunctive relief under Title II of the ADA, Section 504 of the Rehabilitation Act, New York City Human Rights Law and New York State Human Rights

Law, against Defendants and in favor of Plaintiffs as it deems appropriate to remedy past violations of the laws of the United States and to prevent future violations of the same, including making available to deaf and hard of hearing individuals, among other forms of relief:

- qualified interpreters;
- auxiliary aids and services;
- displays in each shelter and housing facility indicating availability of ASL interpreters;
- modification of shelter and housing facility forms to ensure that individuals can designate ASL as their primary language;
- training for DHS and other personnel regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications in its shelters and housing facilities;
- provision/designation of an ADA accessibility coordinator in each shelter and housing facility who would evaluate the needs of any deaf or hard of hearing individuals;
- changes in policy and procedure to ensure compliance with the law; and
- implementation of the means of monitoring and reporting non-compliance with the law.

b. Enter judgment against Defendants and in favor of Plaintiffs for such compensatory (including, but not limited to, damages for emotional distress, loss of opportunity, dignitary harm, economic damages and  nominal damages) as suffered by Plaintiffs under Section 504 of the Rehabilitation Act and Title II of the ADA.;

c. Enter judgment against Defendants and in favor of Plaintiffs for such compensatory (including, but not limited to, damages for emotional distress, loss of opportunity, dignitary harm, economic damages and  nominal  damages) and punitive damages as suffered by Plaintiffs pursuant to the New York State Human Rights Law and the New York City Human Rights Law;

d. Enter judgment against Defendants and in favor of Plaintiffs for the costs of litigation, including reasonable attorneys' fees and costs; and

e. Award Plaintiffs any further relief the Court deems appropriate.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: September 13, 2022
           New York, New York

Respectfully submitted,


Attorneys for Plaintiffs


By: /s/ Clara R. Smit                            By: /s/ Bruce J. Gitlin_____

Clara R. Smit, Esq.
100 Horizon Center Blvd                          Bruce J. Gitlin, P.C.
Hamilton, NJ  08691                              Suite 411
                                                 2095 Broadway
 (732) 843-6600                                  New York, NY 10023

                                                 (212) 514-5437